IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACQUELINE WILLIS,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 3:15-cv-02300-PA

OPINION AND ORDER

PANNER, Judge:

Plaintiff Jacqueline Willis brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title XVI Social Security Income ("SSI") and Title II Disability Insurance Benefits ("DIB") under the Social Security Act. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

Page 1 - OPINION AND ORDER

## PROCEDURAL BACKGROUND

In January 2012, plaintiff applied for SSI and DIB, alleging disability as of January 15, 2009.[1] Tr. 176-77, 180-88. Her applications were denied initially and upon reconsideration. Tr. 109-16, 124-28. On July 30, 2014, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 24-49. On September 8, 2014, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Social Security Act. Tr. 9-17. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-4.[2]

In December 2015, while her appeal was pending, plaintiff filed a new SSI application. Pl.'s Opening Br. Ex. 1. The Commissioner found plaintiff disabled as of September 9, 2014, and therefore granted her request for SSI benefits. Id. Accordingly, this appeal pertains to a closed period that runs from the alleged onset date through September 8, 2014.

## STATEMENT OF FACTS

Born on August 4, 1962, plaintiff was 46 years old on the alleged onset date and 52 years old at the time of the hearing. Tr. 176, 180. Plaintiff obtained an associate degree in accounting in 2007; she also attended college from 2011 through 2014 and is close to receiving a second degree in business. Tr. 34-35, 206-07. She worked previously as a receptionist, cashier, and

---

[1] Plaintiff previously applied for DIB, asserting the same alleged onset date, and was denied at the initial level on August 17, 2010. Tr. 106-08, 172-75. Plaintiff does not argue that the record contains new and material evidence pertaining to her prior DIB claim, such that the earliest date she could receive benefits is August 18, 2010. See generally Pl.'s Opening Br.; Pl.'s Reply Br.; see also Epperson–Nordland v. Colvin, 2013 WL 5774110, *3–4 (D. Or. Oct. 22, 2013) (articulating the standard for reconsidering a previously-adjudicated period).

[2] The record before the Court constitutes nearly 1100 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

Page 2 - OPINION AND ORDER

telemarketer. Tr. 44-45, 207. Plaintiff alleges disability due to obesity, carpel tunnel syndrome, diabetes, asthma, depression, and back and knee pain. Tr. 205, 243.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 11. At step two, the ALJ determined the following impairments were medically determinable and severe: "morbid obesity; degenerative joint disease of the knees; history of broken ankle; and carpal tunnel syndrome of the right wrist." Id. At step three, the ALJ found plaintiff's

impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 12.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to:

> lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand/walk for no more than two hours in an eight-hour workday. She has no sitting limitations. She can occasionally climb ramps and stairs and do no other climbing. She can occasionally balance and kneel and frequently stoop. She can engage in frequent but not constant forceful grasping and twisting with the right upper extremity. She has no limits with the left upper extremity.

Id.

At step four, the ALJ determined plaintiff could perform her past relevant work as a receptionist and telemarketer. Tr. 16. Alternatively, at step five, the ALJ concluded that there were a significant number of jobs in the national and local economy that plaintiff could perform despite her impairments, such as file clerk and food assembler. Tr. 16-17.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting her subjective symptom statements; (2) affording less weight to opinion evidence from Tatsuro Ogisu, M.D., and Linda Land; (3) failing to sufficiently consider the impact of her obesity; and (4) rendering an invalid step five finding.

### I. Plaintiff's Testimony

Plaintiff asserts that the ALJ wrongfully discredited her subjective symptom testimony concerning the severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms

Page 5 - OPINION AND ORDER

complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that she was unable to work due to problems with her knees, back, wrists, and left ankle. Tr. 29-32. She testified further: "I'm so depressed with everything that's been going on with me, I just been really isolating myself away from everybody . . . The only people I really talk to right now is my family and half the time I don't even want to talk to them." Tr. 33. Plaintiff explained that she was taking a break from her college courses in order to support her adult daughter, who had recently been diagnosed with multiple sclerosis. Tr. 34-36. She also noted that "some of the classes, they have stairs that I have to go up and down and it's hard to go up and down the stairs." Tr. 36. When asked about her daily functioning, plaintiff denied having any activities or social contacts. Tr. 40.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms,

but her statements regarding the extent of these symptoms were not fully credible[3] due to her poor work history, failure to seek treatment, and activities of daily living. Tr. 13-15.

Notably, the ALJ found that plaintiff's "poor work history undermines her credibility." Tr. 13. The ALJ may consider a claimant's poor work history in evaluating subjective symptom testimony. Thomas, 278 F.3d at 959; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). As the ALJ observed, plaintiff worked at substantial gainful levels for three of the past 15 years, with very minimal or non-existent earnings pre-2002 and post-2004. Tr. 13, 192; see also Kral v. Astrue, 2011 WL 4383111, *7 (E.D. Cal. Sept. 20, 2011) (affirming the ALJ's adverse credibility finding where the claimant had "7 full substantial gainful activity years in the past 15"). Indeed, the record evinces that plaintiff chose to attend college and spend time with her children in lieu of working. See Tr. 468 ("[w]hen asked how she kept busy between 2004 and 2009, [plaintiff reported to her medical provider that] she attended Everest College for two years during that period and spent the remainder of the time raising her children while supported by TANF benefits"); see also Tr. 42 (plaintiff testifying that she "supported [herself] over the years" with school loans).

---

[3] The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. See SSR 16-3p, available at 2016 WL 1119029 (superseding SSR 96-7p). However, the ALJ's September 2014 decision was issued nearly two years before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling or whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision); but see Garner v. Colvin, 626 Fed.Appx. 699, 701 (9th Cir. 2015) ("we cannot assign error to the ALJ for failing to comply with a regulation that did not exist at the time"). Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve this issue.

Page 7 - OPINION AND ORDER

Additionally, the ALJ resolved that plaintiff's "[t]reatment records reflect a more active lifestyle than alleged." Tr. 15. Activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations omitted). Substantial evidence supports the ALJ's conclusion in the case at bar. For instance, plaintiff engaged in a relatively wide slate of activities, including cooking, cleaning, grocery shopping, attending medical appointments, successfully completing college classes, taking public transportation, exercising, socializing with friends and family, and engaging in romantic relationships. See, e.g., Tr. 347, 463, 468, 603-04, 607, 611-21, 695, 715, 757, 762, 795, 871, 874. In the months leading up to her administrative hearing, plaintiff reported planning and attending a surprise birthday party, participating in rose festival activities with family and friends, walking daily, and caring for her mother and daughter; plaintiff also frequently attended medical appointments accompanied by her friends during this period. Tr. 597-602, 622-58, 1002.

Finally, the ALJ determined that plaintiff's "lack of treatment undermines her allegations of debilitating symptoms." Tr. 13. Failure to seek medical treatment is a clear and convincing reason to reject a claimant's subjective statements. Burch, 400 F.3d at 681. Here, plaintiff "concedes that there is not extensive medical treatment prior to 2011" but argues that "this does not undermine [her] symptom testimony from 2011 through the date of the hearing decision." Pl.'s Opening Br. 16. As discussed above, however, plaintiff engaged activities from 2011 through 2014 that contradict her claims of totally debilitating impairment. In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for finding plaintiff not fully credible. The ALJ's assessment of plaintiff's subjective symptom testimony is affirmed.

## II. Medical Evidence

Plaintiff contends the ALJ improperly discredited the opinions of Dr. Ogisu and Ms. Land.

### A. Dr. Ogisu

There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

In October 2012, Dr. Ogisu performed a one-time evaluation to assess plaintiff's physical functioning. Tr. 463-65. Based on his exam, as well as a clinical interview with plaintiff, Dr. Ogisu diagnosed plaintiff with chronic lower back pain, healing left ankle fracture, osteoarthritis of the knees, leg length discrepancy, and morbid obesity, and determined that plaintiff was capable of performing essentially light exertion work. Tr. 465; see also 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining the exertional requirements of light work). In addition, Dr. Ogisu opined that "[a]n assistive device is not absolutely required for ambulation, but the use of a walking stick or a cane is recommended when traversing over rough, uneven, and sloped surfaces." Tr. 465.

The ALJ afforded Dr. Ogisu's opinion "some weight." Tr. 14. However, the ALJ found that the "[e]vidence does not support ongoing need for an assistive device on uneven terrain" because plaintiff's "ankle fracture was not fully healed at the time of his assessment." Id.

Page 9 - OPINION AND ORDER

After carefully reviewing the record before it, the Court finds that the ALJ did not commit harmful legal error in evaluating Dr. Ogisu's opinion. As a preliminary matter, the jobs identified by the VE are performed in controlled, indoor environments and therefore are not likely to involve rough, uneven, or sloped terrain. Tr. 45-46; DOT § 206.387–034, available at 1991 WL 671737; DOT § 319.484-010, available at 1991 WL 672769. Thus, there is no indication that plaintiff would be unable to perform the representative occupations at issue even if Dr. Ogisu's recommendation relating to an assistive device were credited as true. In any event, as the ALJ noted, plaintiff's ankle was recently broken and still in a brace at the time of Dr. Ogisu's evaluation. Tr. 14, 464. Accordingly, it was reasonable for the ALJ to conclude that plaintiff's ability to ambulate would improve once the healing process was complete, especially given that plaintiff informed Dr. Ogisu that she "does not [ordinarily] use any assistive device for ambulation." Tr. 463. For these reasons, reversal is not appropriate as to this issue.

### B. Ms. Land

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of that impairment and how it affects the claimant's ability to work. 20 C.F.R. §§ 404.1513, 416.913. "Other sources" include, but are not limited to, nurse practitioners. Id.; SSR 06-03p, available at 2006 WL 2329939. To disregard the opinion of an "other" or lay source, the ALJ need only provide a reason that is germane to that witness. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010).

In October 2013, plaintiff initiated treatment with Ms. Land. Tr. 689. In July 2014, Ms. Land completed a medical source statement prepared by plaintiff's attorney. Tr. 1029-34. Ms.

Land checked boxes reflecting that plaintiff could: lift/carry up to ten pounds occasionally; sit for five hours and stand/walk for three hours in an eight-hour workday; continuously reach, handle, push, pull, feel, finger, and operate foot controls; occasionally climb ramps and stairs, and balance; never climb ladders or scaffolds; and never stoop, kneel, crouch, or crawl. Id. Ms. Land also indicated that an assistive device was medically necessary; she nonetheless opined that plaintiff could walk short distances without an assistive device and carry small objects while using as assistive device. Tr. 1030. Ms. Land attributed plaintiff's work-related restrictions to degenerative joint disease, as documented by her December 2013 knee x-rays. Tr. 1029-34.

The ALJ gave "little weight" to Ms. Land's opinion because it was inconsistent with plaintiff daily activities and not supported by any examination findings or chart notes. Tr. 15.

Inconsistency with the record is a proper basis to reject a medical provider's opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Contradiction between a medical provider's opinion and her treatment notes also constitutes a legally sufficient reason to reject that opinion. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009); see also Thomas, 278 F.3d at 957 (ALJ may disregard "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings").

As discussed in section I, plaintiff was participating in a number of daily activities during the relevant time period. As the ALJ reasonably concluded, these activities belie the more restrictive aspects of Ms. Land's opinion.

Moreover, an independent review of the record reveals that Ms. Land's opinion is not supported by her chart notes. While plaintiff established care with Ms. Land in October 2013,

Page 11 - OPINION AND ORDER

she did not complain of knee pain until December 2013. Tr. 677-81; see also Tr. 682-90 (plaintiff obtaining care from Ms. Land in October and November 2013 but neglecting to mention knee pain). Due to time constraints, Ms. Land was unable to examine plaintiff but ordered imaging studies, which revealed degenerative joint disease in both knees. Tr. 677-81, 772. In January 2013, plaintiff proceeded with a steroid injection in the left knee. Tr. 665. Plaintiff experienced positive results; however, by March 2013, her pain was returning, although she was still able to engage in daily walks. Tr. 656-64. In April 2014, plaintiff obtained a second steroid injection and her symptoms again improved. See Tr. 646 (plaintiff reporting that the April 2014 "knee injection helped a lot [such that she] has been walking more"). Despite seeking frequent treatment for a skin abscess, plaintiff did not report knee pain again until July 2014, the month of the ALJ hearing. Tr. 623-45, 987-1002. While plaintiff was still walking daily for exercise at that time, Ms. Land ordered a walker because plaintiff had recently begun using a broken one that she found in her building. Tr. 987-94. As the ALJ denoted, this evidence suggests that plaintiff was capable of performing work consistent with the RFC during the relevant time period.[4] The ALJ's evaluation of the medical opinion evidence is upheld.

### III. Obesity

Plaintiff argues that the ALJ failed to evaluate the effects of her obesity pursuant to SSR 02-1p. Under SSR 02-1p, an ALJ "may not make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-1p, available at 2002 WL

---

[4] While not dispositive, the Court notes that plaintiff does not provide any argument or evidence demonstrating that her use of an assistive device would preclude performance of the jobs identified by the VE. See generally Pl.'s Opening Br.; Pl.'s Reply Br.; see also McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) (burden of establishing that an error is harmful falls on the party attacking an administrative agency's determination).

Page 12 - OPINION AND ORDER

34686281. Rather, the ALJ "will evaluate each case based on the information in the case record." Id.

The Court finds that the ALJ adequately complied with SSR 02-1p. The ALJ determined obesity was a medically determinable, severe impairment at step two. Tr. 11. The ALJ again discussed obesity when evaluating the listings at step three. Tr. 12. In formulating plaintiff's RFC, the ALJ explicitly concluded that work-related restrictions were warranted, in part, due to plaintiff's obesity. Tr. 12-15; see also Burch, 400 F.3d at 682-84 (affirming the ALJ's decision where the ALJ discussed evidence of weight gain, recognized that obesity likely contributed to the claimant's back discomfort, and limited the claimant to a reduced range of light work). Furthermore, there is no evidence from any acceptable medical source indicating that plaintiff is more limited as a result of her obesity (or any other impairment) and, as addressed herein, plaintiff was engaging in a relatively wide slate of daily activities despite her weight during the relevant time period. The ALJ's decision is affirmed in this regard.

## IV. Step Five Finding

Plaintiff asserts that the ALJ erred at step five by failing to apply the Medical-Vocational Guidelines ("Grids") to find her disabled as of her 50th birthday in light of the fact that a standing and walking limitation of two hours more closely resembles a sedentary RFC than a light RFC.[5]

---

[5] Plaintiff contends, for the first time in her reply brief, that the ALJ erred in finding she could return to her past relevant work at step four. Pl.'s Reply Br. 2-3. Yet, as plaintiff acknowledges, "the ALJ made alternate Step Five findings," such that any error at step four was harmless. Id. at 4; see also Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). To the extent plaintiff claims the ALJ's step five finding was deficient because the RFC was internally inconsistent, her argument is unpersuasive. See Pl.'s Opening Br. 7 ("[i]f Plaintiff cannot walk or stand for more than two hours, she incapable of [frequently – i.e., for

Page 13 - OPINION AND ORDER

There are two ways that the Commissioner can meet her step five burden: by applying the Grids or taking the testimony of a VE. Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988). The ALJ must only rely on the Grids where the claimant possesses "substantially uniform levels of impairment" in relation to the four vocational factors – i.e., age, work experience, education, and physical ability. Thomas, 278 F.3d at 960 (citation omitted). However, the Grids are inapplicable when they "do not adequately take into account a claimant's abilities and limitations." Id.; see also SSR 83-10, available at 1983 WL 31251 ("[w]here the findings regarding each factor coincide with the criteria for the corresponding factor in a rule, that rule applies [but where] one or more of the criteria of a rule are not met, no decision is directed"). In other words, where "a claimant's exertional limitation falls between two grid rules, the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert." Thomas, 278 F.3d at 960 (citations omitted).

In the case at bar, the ALJ found that plaintiff could perform the lifting and carrying requirements of light work, but stand and walk consistent with the range of sedentary work. Tr. 12; 20 C.F.R. §§ 404.1567(a)-(b), 416.967(a)-(b). As a result, it would have been improper for the ALJ to exclusively employ the Grids because plaintiff's RFC did not directly correspond to either the light or sedentary exertion rule. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.14, 202.14 (relevant Grid rules); see also Tr. 17 (ALJ recognizing that plaintiff's "ability to perform

---

two-thirds of an eight-hour workday – lifting/carrying] any amount of weight"). The VE testified that the representative occupations would accommodate for both plaintiff's lifting/carrying and standing/walking limitations, and plaintiff has not cited to any evidence undermining that testimony. Tr. 45-47; see generally Pl.'s Opening Br.; Pl.'s Reply Br. In fact, because the RFC represents the most a claimant can do despite her limitations, as opposed to the least, the frequency of the various functions specified therein do not precisely correspond to one another. 20 C.F.R. §§ 404.1545, 416.945. Further, plaintiff does not address why she would be unable to perform most lifting/carrying requirements from a seated position.

Page 14 - OPINION AND ORDER

all or substantially all of the requirements of [light work] has been impeded by additional limitations [such that a VE was necessary to] determine the extent to which these limitations erode the light occupational base"). As such, the ALJ did not commit legal error by utilizing a VE.

Moreover, the ALJ's step five finding was based on substantial evidence. In response to the ALJ's dispositive hypothetical question, the VE identified the light exertion representative occupations of file clerk and food assembler, which respectively represented 158,000 and 16,500 jobs in the national economy, and 1,700 and 270 jobs in Oregon. Tr. 46; see also Thomas, 278 F.3d at 960 (affirming the ALJ's decision under analogous circumstances). The ALJ's step five finding is upheld.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this __15__ day of September 2016.

_____
Owen M. Panner
United States District Judge

Page 15 - OPINION AND ORDER